IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOSEPH THOMPSON,                )
                                )
        Plaintiff,              )
                                )
    v.                          )        CASE NO. 2:08-CV-931-TMH
                                )               [WO]
LEROY UPSHAW, et al.,           )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Joseph Thompson ["Thompson"], an indigent inmate, in which he challenges the constitutionality of medical treatment provided to him during his confinement at the Barbour County Jail in 2008.  Specifically, Thompson complains he did not receive adequate treatment for hypertension, diabetes and hepatitis C.  Thompson names Leroy Upshaw, the sheriff of Barbour County, Alabama, and Eddie Ingram, chief deputy of the Barbour County Sheriff's Department, as defendants in this cause of action.  Thompson seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and relevant supporting evidentiary materials addressing Thompson's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary judgment.  *Order of May 29, 2009 - Court Doc. No. 25.*  Upon consideration of this motion, the evidentiary

materials filed by the defendants and Thompson's response filed on July 10, 2009, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Thompson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable

... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987)

4

(if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings,

5

evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Thompson fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity

To the extent Thompson sues the defendants in their official capacities, they are immune from monetary damages.[2]  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166

---

[2]Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

(1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Deliberate Indifference

Thompson complains that the defendants failed to provide him adequate medical treatment for his hypertension, diabetes and hepatitis C.  *Plaintiff's Complaint - Court Doc. No. 1* at 2-3.  The defendants deny they acted with deliberate indifference to Thompson's medical conditions and, instead, maintain they provided Thompson with appropriate

treatment for his conditions.

To prevail on a constitutional claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, jail personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known

risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not, while

no cause for commendation, cannot under our cases be condemned as the infliction of

punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government

actors should have employed additional diagnostic techniques or forms of treatment 'is a

classic example of a matter for medical judgment' and therefore not an appropriate basis for

liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995);

*Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that prison inmate

desires a different mode of medical treatment does not amount to deliberate indifference

violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A

difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001). Thus, for Thompson to survive summary judgment on his deliberate indifference claim against the defendants, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The medical records filed herein demonstrate that during Thompson's confinement in the Barbour County Jail correctional officials allowed Thompson access to medical care and medical personnel consistently provided treatment to Thompson for his hypertension, diabetes and hepatitis C as dictated by their assessment of his conditions. *Defendant's Exhibit A thru D - Court Doc. No. 23-1* at 1-30 and *Defendants' Exhibit E thru J - Court Doc. No. 23-2* at 1-36. The significantly probative evidentiary materials before the court

further demonstrate that the jail's medical staff routinely examined Thompson, thoroughly

evaluated his complaints, ordered necessary tests, prescribed various medications including

Glypizide, Quinapril, Norvasc and Azithromycin, furnished a glucometer to Thompson for

use in performing tests of his blood sugar, allowed the inmate to perform such tests, referred

him to a free-world gastroenterologist for evaluation and provided continuous treatment for

his hypertension, diabetes and hepatitis C in accordance with their professional judgment.

*Id.*; *Defendant's Exhibit G (Affidavit of Dr. Jesse C. Haggerty) - Court Doc. No. 23-2* at 23-

25.  Jail personnel followed all orders regarding Thompson's medical treatment issued by the

jail's medical staff and the free-world physician.  Dr. Haggerty provides the following

summary of medical treatment provided Thompson with respect to the claims presented in

the instant complaint:

> I have a contract with the Barbour County Commission to provide
> medical services for inmates in the Barbour County Jail.  I visit the jail at least
> once per week on Wednesdays.  Inmates who need to see me on days other
> than Wednesday are brought to my office.  I am also on call twenty-four hours
> a day, seven days a week for medical emergencies.
> * * *
> I saw Joseph Thompson as a patient while he was incarcerated at the
> Barbour County Jail.  While I saw him as a patient, Mr. Thompson received
> good and timely medical care.  Mr. Thompson  came into the jail with several
> health problems including hypertension, diabetes, and undiagnosed hepatitis
> C.   Regarding the hepatitis C, Mr. Thompson learned that he had some
> problem with his liver approximately two years before his incarceration at the
> Barbour County Jail began; however, Mr. Thompson never followed up [on
> this initial diagnosis].
> During the course of his treatment, Mr. Thompson's medications for
> hypertension and diabetes were modified several times. When Mr. Thompson
> came to the Barbour County Jail, he was not adequately following a treatment
> regiment for his hypertension or diabetes. Modifying Mr. Thompson's

medications was a necessary part of his treatment.  Modifications require from four to eight weeks to take effect; thus, appropriate time must pass before a medication's effect can be evaluated properly.    After evaluation, Mr. Thompson's medications were modified accordingly.

Mr. Thompson was told he had some problem with his liver, and blood was drawn for testing on his initial visit.  The results of the test indicated that there was an inflammation of his liver.  However, an inflammation of the liver can be caused by many factors such as virus, chemicals, environment, or fat. Importantly, at that time, the tests did not return a positive for viral hepatitis. Therefore, the next logical step was to retest Mr. Thompson in ninety days. Mr. Thompson's second round of tests showed positive for hepatitis.  Mr. Thompson was then sent to a specialist, Dr. Samuel Tarwater, for further testing and evaluation.  Evaluation by a specialist is necessary not only to analyze the disease but also to determine whether a patient is a good candidate for treatment.  Treatment for hepatitis is brutal both mentally and physically. Depression occurs in fifty to seventy percent of persons treated for hepatitis. Additionally, Mr. Thompson already had several health issues that could have [adversely] affected his ability to physically handle the treatment

*Defendant's Exhibit G (Affidavit of Dr. Jesse C. Haggerty) - Court Doc. No. 23-2 at 23-25.*

Upon Dr. Tarwater's examination of Thompson, the inmate "actually denie[d] any symptoms [related to hepatitis C]....  He denies ever having had a problem with heavy alcohol consumption, drinking only an occasional beer; however, he has been incarcerated for the past five months and has not had any alcohol.  His bowels move daily.  He has not seen any blood in the stool.  He has had no black or tarry stools.  He denies any upper symptoms such as acid reflux, indigestion, or heartburn.  He denies any nausea, vomiting or dysphagia.  He denies any history of acute hepatitis episode requiring hospitalization." *Defendants Exhibit B - Court Doc. No. 23-1* at 16.  Dr. Tarwater found Thompson "in no acute distress." *Id*. at 17.  Based on his examination, Dr. Tarwater  ordered a CT scan of Thompson's abdomen which revealed the following:

Lunge Bases:  Clear.

Abdomen:  Liver and spleen are grossly normal.  No focal lesions noted in the liver.  Punctate calcification in the gallbladder wall and nondependent region likely represent a calcified polyp.

Pancreas is within normal limits.  There are some scattered lymph nodes in the porta hepatis and celiac region that are non-specific may be related to patient's hepatitis.  Adrenal glands are unremarkable as well as the kidneys.  Bowel is grossly normal.

**IMPRESSION:** CT abdomen shows no acute process.  No focal liver lesions identified.  There are scattered lymph nodes in the porta hepatitis and peripancreatic region as well as in the retroaortic region noted likely reactive in nature as they do not appear pathologically enlarged.

*Defendants Exhibit B - Court Doc. No. 23-1* at 19.  The results of the CT scan "[s]howed no acute abnormalities" and Dr. Tarwater advised Thompson to "follow up with [his] family physician."  *Defendants Exhibit D - Court Doc. No. 23-1* at 30.

Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate.  Although Thompson asserts he should have been provided a different treatment regimen for his medical conditions, this assertion fails to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical

13

treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).  It is undisputed that Thompson received significant medical treatment as dictated by objective evaluations of his condition.  Based on well settled law cited herein, his mere desire for a different mode of medical treatment does not amount to deliberate indifference.  Thompson has failed to present any evidence which indicates the defendants knew that the manner in which medical personnel treated his medical conditions created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Thompson's hypertension, diabetes or hepatitis.  Consequently, summary judgment is due to be granted in favor of the defendants.  *Carter*, 352 F.3d at 1350.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before December 3, 2010 the parties may file objections to this

Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 19th day of November, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE